**FILED**

AUG 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF COLUMBIA

|  |  |
|---|---|
| BIRDA TROLLINGER, VIRGINIA BRAVO, KELLY KESSINGER, IDOYNIA McCOY, REGINA LEE, PATRICIA MIMS, LORI WINDHAM, and ALEXANDER HOWLETT, individually and on behalf of all others similarly situated, | MISCELLANEOUS CASE |

Through Counsel:

Howard W. Foster
Johnson & Bell, Ltd.
33 West Monroe, Suite 2700
Chicago, IL 60603
Telephone: (312) 372-0770
Attorney for Plaintiffs

                                    Plaintiffs,

    v.

TYSON FOODS, INC. a Corporation, JOHN TYSON, ARCHIBALD SCHAFFER III, RICHARD BOND, KENNETH KIMBRO, GREG LEE, KAREN PERCIVAL, AHRAZUE WILT, TIM McCOY

Case: 1:07-mc-00341
Assigned To : Leon, Richard J.
Assign. Date : 8/29/2007
Description: Miscellaneous

Through Counsel:

Frank Volpe
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 2005-1401
Attorney for the Defendants

                                    Defendants.

## PLAINTIFFS' MOTION TO COMPEL
## USCIS TO COMPLY WITH THEIR SUBPOENA

Plaintiffs, by undersigned counsel, hereby submit their Motion To Compel the U.S.

Citizenship and Immigration Services of the Department of Homeland Security ("USCIS") to

comply with their Subpoena regarding the production of documents related to Ana Hart's immigration status.   A memorandum in support of this motion is filed separately.

Dated:  August 28, 2007                Respectfully submitted,

                                       BIRDA TROLLINGER, *et al.,* Plaintiffs


                                       _____
                                       Howard W. Foster
                                       Johnson & Bell, Ltd.
                                       33 West Monroe, Suite 2700
                                       Chicago, IL  60603
                                       Telephone:  (312) 372-0770
                                       Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFFS' MOTION TO COMPEL USCIS

TO COMPLY WITH THEIR SUBPOENA will be served on all parties listed below, by facsimile

and U.S. mail, upon our receipt of a file-stamped copy from the Clerk of the United States District

Court for the District of Columbia:

> Eric Banks
> Office of the Chief Counsel,
> Department of Homeland Security
> 20 Massachusetts. Ave., N.W.
> Washington, DC 20529
> (202) 272-1405 Fax
>
> Frank Volpe
> Sidley Austin LLP
> 1501 K Street, N.W.
> Washington, DC 2005-1401
> Attorney for the Defendants

Dated this 28th day of August, 2007

By: _____

Howard W. Foster

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BIRDA TROLLINGER, VIRGINIA BRAVO, KELLY KESSINGER, IDOYNIA McCOY, REGINA LEE, PATRICIA MIMS, LORI WINDHAM, and ALEXANDER HOWLETT, individually and on behalf of all others similarly situated, <br><br> Through Counsel: <br><br> Howard W. Foster <br> Johnson & Bell, Ltd. <br> 33 West Monroe, Suite 2700 <br> Chicago, IL 60603 <br> Telephone: (312) 372-0770 <br> Attorney for Plaintiffs <br><br>             Plaintiffs, <br><br>    v. <br><br> TYSON FOODS, INC. a Corporation, JOHN TYSON, ARCHIBALD SCHAFFER III, RICHARD BOND, KENNETH KIMBRO, GREG LEE, KAREN PERCIVAL, AHRAZUE WILT, TIM McCOY <br><br> Through Counsel: <br><br> Frank Volpe <br> Sidley Austin LLP <br> 1501 K Street, N.W. <br> Washington, DC 2005-1401 <br> Attorney for the Defendants <br><br>            Defendants. | MISCELLANEOUS CASE |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
## MOTION TO COMPEL USCIS TO COMPLY WITH THEIR SUBPOENA

Plaintiffs, by undersigned counsel, hereby submit their Memorandum In Support Of Their

Motion To Compel the U.S. Citizenship and Immigration Services of the Department of Homeland

07-341

**FILED**

AUG 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Security ("USCIS") to comply with their Subpoena regarding the production of documents related to Ana Hart's immigration status. For the reasons stated below, Plaintiffs' Motion should be granted.[1]

## I.    INTRODUCTION

On April 24, 2007, Plaintiffs issued a subpoena to USCIS for immigration documents related to Ana Hart. *See* Ex. A. On June 26, 2007, USCIS responded by objecting to this request based on relevancy. *See* Ex. B. Pursuant to Fed R. Civ. P. 37 and 45, the parties have discussed the issue on numerous occasions, *see* Ex. C, and as such, USCIS will not produce the documents absent a Court Order. Id. USCIS, however, has indicated that it will not oppose the Motion. Id.

## II.    THE DOCUMENTS SOUGHT ARE RELEVANT AND PRODUCTION CAN BE ORDERED BY THIS COURT

### A.    *The Information Sought in the Subpoena Is Relevant To This Case*

As noted by USCIS, the test for discoverability here is relevancy under Fed. R. Civ. P. 26(b)(1). *See* Ex. B; *see also* <u>Touhy</u> regulations, 6 C.F.R. Subpart C (*citied* by USCIS). As Plaintiffs stated in their original correspondence (submitted with their subpoena), and in subsequent discovery conferences, the documents related to Ana Hart's immigration status are relevant to this case. Specifically, Ana Hart currently serves as a Tyson Foods' liaison to a number of local and national Hispanic rights organizations, which Plaintiffs alleges have formed a RICO enterprise with Tyson Foods for the purpose of hiring illegal aliens. During her deposition, Hart claimed to be a legal U.S. resident, though based on her testimony, the facts surrounding this claim appear to be suspect. Therefore, if Hart is, or was ever, in the U.S. illegally—as Plaintiffs suspect—this would be very relevant for her motive in being a key figure in the alleged Tyson-Hispanic Group Enterprise (which

---

[1] USCIS does not oppose the motion being heard by this Court. *See* Ex. C.

as stated above, exists partly to assist Tyson in hiring illegal immigrants).  It would also be relevant

in demonstrating Tyson's purposes in creating Hart's full-time liaison position with these groups.[2]

**B.**   ***This Court Can Order Production Under the Privacy Act***

This Court has authority to order the production at issue here.  5 U.S.C. § 552a(b)(11) states,

in pertinent part:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, *unless disclosure of the record would be-- pursuant to the order of a court of competent jurisdiction.*

(emphasis added); *see also* <u>Laxalt v. McClatchy</u>, 809 F.2d 885, 888- 889 (D.C. Cir. 1987) (holding

that the Privacy Act permits disclosure by an agency pursuant to a court order).   USCIS concedes

the authority of this Court to order this production.  *See* Ex. C.


**III.   CONCLUSION**

For the reasons stated herein, Plaintiffs' Motion to Compel should be granted.

Dated: August 28, 2007              Respectfully submitted,

BIRDA TROLLINGER, *et al.,* Plaintiffs

By:      _____
Howard W. Foster
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
(312) 372-0770
(312) 372-9818
Email:  fosterh@jbltd.com

*Attorney for the Plaintiffs*

---

[2] Though Hart is not a named defendant, allegations surrounding her involvement with these groups are stated in the Second Amended Complaint, ¶ 54.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL USCIS TO COMPLY WITH THEIR SUBPOENA will be served on all parties listed below, by facsimile and U.S. mail, upon our receipt of a file-stamped copy from the Clerk of the United States District Court for the District of Columbia:

Eric Banks
Office of the Chief Counsel,
Department of Homeland Security
20 Massachusetts. Ave., N.W.
Washington, DC 20529
(202) 272-1405 Fax

Frank Volpe
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 2005-1401
Attorney for the Defendants

Dated this 28th day of August, 2007

By: _____
Howard W. Foster

# Exhibit A

# JOHNSON&BELL Ltd.
### ──────── Attorneys at Law ────────

SUITE 2700
33 WEST MONROE STREET
CHICAGO, IL 60603-5404
TELEPHONE: (312) 372-0770
FACSIMILE: (312) 372-9818

SUITE A
9000 INDIANAPOLIS BLVD.
HIGHLAND, IN 46322-2501
TELEPHONE: (219) 993-5250
FACSIMILE: (219) 993-6170

SUITE 200
325 WASHINGTON STREET
WAUKEGAN, IL 60085-5572
TELEPHONE: (847) 662-7458
FACSIMILE: (847) 662-7366

WWW.JOHNSONANDBELL.COM

WRITER'S DIRECT DIAL NUMBER

April 24, 2007

Mr. Patrick Kernan
Office of Chief Counsel
Department of Homeland Security, C.I.S.
20 Massachusetts Av., N.W.
Washington, D.C. 20529

  Re: *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23
     Eastern District of Tennessee

(312) 984-0215
fosterh@jbltd.com

Dear Mr. Kernan:

  This letter has been included to give you some background information to the enclosed subpoena in order to help you identify the relevant documents. As you may remember, we are still currently involved in civil RICO litigation with Tyson Foods and some of its corporate executives, and our case is a class action brought on behalf of legal Tyson Foods' employees whose wages have been depressed because of Tyson's hiring scheme of employing illegal aliens.

  Ms. Hart currently works for Tyson Foods as a liaison to a number of local and national Hispanic Rights Groups, which we allege have formed a RICO enterprise with Tyson Foods in order to hire the illegal aliens. She claims to be a legal permanent resident, though the facts surrounding her claim appear to be suspect. For this reason, her immigration status is relevant to our case as we move forward and investigate her relationship with a number of these Hispanic Rights Groups.

  If you have any questions, please feel free to contact me. Thank you for your continued help in this matter.

     Sincerely,

     Johnson & Bell, Ltd.

     Howard Foster

*07-341*

# FILED

AUG 2 9 2007

**NANCY MAYER WHITTINGTON, CLERK**
U.S. DISTRICT COURT

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF          DISTRICT OF COLUMBIA

| | |
|---|---|
| Trollinger, et al. <br> V. <br> Tyson Foods, Inc., et al. | **SUBPOENA IN A CIVIL CASE** <br><br> Case Number:[1]  4:02-CV-23, E. Dist. Tennessee |

TO:  Mr. Patrick Kernan
Office of Chief Counsel
Department of Homeland Security, C.I.S.
20 Massachsetts Ave, NW, Washington DC 20529

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Lorena Hart; aka Ana Leland; aka Ana Moreno Oviedo; aka Ana Hart; born January 31, 1970, in Mexicali, Baja, California, Mexico.  This request includes, but is not limited to, applications for residency status and documents and alien registration cards and numbers.

| PLACE | Johnson & Bell, Ltd., 33 W. Monroe St., Suite 2700, Chicago, IL  60603 | DATE AND TIME <br> 5/25/2007 5:00 pm |
|---|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Howard Foster*, for Plaintiffs | 4/24/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Howard W. Foster, Johnson & Bell Ltd., 33 W. Monroe, Suite 2700, Chicago, IL  60603   (312) 372-0770

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 4/24/2007 | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Mr. Patrick Kernan, Office of Chief Counsel Department of Homeland Seculrity, C.I.S. | Federal Express |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Federal Express | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# Exhibit B

*Office of the Chief Counsel*

**U.S. Department of Homeland Security**
20 Massachusetts Avenue, N.W. Room 4210
Washington, DC 20529



**U.S. Citizenship
and Immigration
Services**

June 26, 2006

Howard Foster, Esquire
Johnson & Bell
Attorneys-at-Law
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603-5404

Re: *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23
    Eastern District of Tennessee

Dear Mr. Foster:

This responds to your letter of April 24, 2006, addressed to Patrick Kernan , Office of Chief Counsel, U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS), forwarding a subpoena commanding the production of documents from USCIS files pertaining to Lorena Hart, among other aliases.

As you are aware, the DHS has adopted *Touhy* regulations that set forth the procedures to be followed with respect to the service of, and responses to, subpoenas for official information, records, or action directed at the DHS or its constituent units. *See United States Ex Rel. Touhy v. Ragen, Warden, et al.*, 340 US 462 (1951); 6 CFR Subpart C. Section 5.48 of the regulations outlines factors that a DHS component must consider in determining whether to comply with a demand or request for agency records and information. *See* 6 CFR § 5.48. Among any other pertinent considerations, the regulations direct Department officials and attorneys to consider whether compliance is appropriate under the applicable rules of discovery or the applicable rules of procedure governing the case or matter in which the demand arose. See 6 CFR § 5.48(a)(1).

To announce your demand for access to USCIS records, you elected to issue a subpoena *duces tecum* under the auspices of the U.S. District Court for the District of Columbia. Your demand, therefore, is governed by Rule 26(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 26(b). Under Rule 26(b)(1), parties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible at trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

The test of discoverability is the relevance standard of Rule 26(b)(1). *See e.g. Paul Laxalt v. C.K. McClatchy, et al.*, 258 U.S. App. D.C. 44; 809 F.2d 885 (D.C. Cir. 1987); *Forrest v. U.S.*, No. 95-3889, 1996 U.S. Dist. LEXIS 4589, at *4 (E.D. Pa., Apr. 11, 1996). If official information is sought by request or    *07-34/*

**FILED**

AUG 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Howard Foster, Esq.
Page 2

demand, a DHS regulation requires the party seeking such release to set forth, with as much specificity as possible, the nature and relevance of the official information sought in the context of the cause of action from which the demand arose. *See* 6 CFR § 5.45(a). The purpose for this regulatory requirement is to obtain, for the administrative record, sufficient information to arrive at a tenable determination regarding relevance as contemplated by Rule 26(b)(1).

In compliance with subsection 5.45(a) of the regulations, the subject subpoena was accompanied by a letter "included to give [the USCIS] some background information to the enclosed subpoena in order to help ... identify the relevant documents." *See* April 24, 2007, cover letter, 1st paragraph, 1st sentence. The action which gave rise to the instant demand is described in that letter as "civil RICO litigation ... brought on behalf of legal Tyson Foods employees whose wages have been depressed because of Tyson's hiring scheme of employing illegal aliens." The paragraph aimed specifically at establishing the relevance of the demanded information warrants quoting in full:

> Ms. Hart currently works for Tyson Foods as a liaison to a number of local and national Hispanic Rights Groups, which we allege have formed a RICO enterprise with Tyson Foods in order to hire illegal aliens. She claims to be a legal permanent resident, though the facts surrounding her claim appear to be suspect. *For this reason, the immigration status is relevant to our case* as we move forward and investigate her relationship with a number of these Hispanic Rights Groups. (Emphasis added.)

Based upon information provided in the above-quoted cover letter, and without more, it has been determined that there is no nexus or rational relationship between the subject of your demand; i.e., the immigration status of a corporate liaison, and the theory, as we understand it, underlying the cause of action fashioned as *Trollinger v. Tyson*, i.e., Tyson Foods has formed a RICO enterprise with local and national Hispanic Rights Groups in order to hire illegal aliens. If our understanding of your theory is correct, Tyson Foods could have formed a RICO enterprise with local and national Hispanic Rights Groups *regardless* of Lorena Hart's immigration status. Stated another way, how would it affect civil RICO litigation if it were conclusively shown that Ms. Hart is a legal permanent resident? Would Tyson Foods be more or less likely to be found as engaging in a RICO enterprise based upon Ms. Hart's immigration status? It would appear that no matter how the questions are cast or phrased, the immigration status of a lone corporate employee, Ms. Hart, without more, would be wholly irrelevant to establishing the existence of an ongoing RICO enterprise engaged in by Tyson Foods, *inter alia*. Issuing a subpoena to Tyson for all employee records would likely yield far more productive, and relevant, results.

In reaching this determination, the relevancy of the demanded information was liberally construed in keeping with the proposition that relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, discovery has ultimate and necessary boundaries. *See e.g. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed.2d 253 (1978). Agencies are admonished that the relevancy requirement "should not be misapplied so as to allow fishing expeditions in discovery." *Zenith Electronics Corporation v. Exzec, Inc.*, 1998 U.S. Dist. LEXIS 215, No. 93 C 5041, 1998 WL 9181, at*2 (N.D. Ill. Jan. 5, 1998). In assessing relevance, we confined ourselves to interpreting and analyzing only that information with which we were provided, and were unable to discern the relevance of Ms. Hart's immigration status to the underlying litigation or how disclosing that status could lead to the discovery of admissible evidence.

DHS regulations also require Department officials and attorneys to consider whether compliance with such a demand for access is appropriate under the relevant substantive law concerning privilege or the disclosure of official information. 6 CFR 5.48(a)(2). Obviously, if the information demanded is not subject to any privilege or statutory prohibitions against disclosure, and is the type readily available to any member of the

Howard Foster, Esq.
Page 3

general public, then there would be no basis for denying access to the originator of the demand, relevance notwithstanding, unless a denial of access is indicated by some other prudential or policy consideration.

The record you have demanded, to the extent that it exists, would be maintained in this agency's system of records known as "Alien File/Central Index System (A-file/CIS – Justice/INS 001A)." *See* 72 Fed. Reg. 1755 (Tuesday January 16, 2007). This system of records is protected from indiscriminate disclosures pursuant to the Privacy Act of 1974, as amended, 5 USC § 552a.[1] The Privacy Act strictly prohibits the disclosure of information assigned to this system of records to any person, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be, for example, required under the Freedom of Information Act (FOIA), 5 USC § 552, as amended; for a "routine use" as defined and described by the Privacy Act under subsections 552a(a)(7) and -(e)(4)(D), respectively; or pursuant to the order of a court of competent jurisdiction, 5 USC § 552a(b)(11). The release of the information you have requested is neither required by the FOIA, authorized by the system of records' published routine uses, nor ordered by a court of competent jurisdiction.

Under the FOIA, the subject record would be entitled to the protection of subsection (b)(6) of that Act which exempts from disclosure agency records the release of which would constitute a clearly unwarranted invasion of personal privacy, and its release would not contribute to the public's understanding of how this agency performs its statutory duties.. *See* 5 USC § 552(b)(6). Accordingly, if requested by an unrelated third party under the FOIA, the subject record, if extant, would be withheld from disclosure by this agency pursuant to FOIA exemption (b)(6).

The disclosure you seek is not authorized under any provision of the Privacy Act. As an unrelated third party, you are not entitled to access the demanded record in your own right, and the USCIS has not been presented with a valid written consent to such a disclosure signed by the individual to whom the requested record pertains. *See* 5 USC § 552a(b). Moreover, the disclosure you seek is not authorized by the USCIS's published "routine uses" covering Alien Files. *See* 72 Fed. Reg. at 1757.

While subsection (b)(11) of the Privacy Act sanctions agency disclosures made "pursuant to the order of a court of competent jurisdiction," 5 USC § 552a(b)(11), judicial circuits are split as to whether such a subpoena constitutes the compulsory legal process addressed at subsection (b)(11) of the Act. The U.S. Court of Appeals for the District of Columbia, which has had occasion to analyze this provision, has taken the position that this provision must be interpreted literally, not liberally. That is, to be an "order of a court" recognized under subsection (b)(11), the order directing disclosure must specifically have been issued by a court. *See John Doe v. Joseph DiGenova et al.*, 250 U.S. App. D.C. 274, 779 F.2d 74 (D.C. Cir. 1985); *see also Stiles v. Atlanta Gas Light Company*, 453 F. Supp 798 (N.D. Ga. 1978); U.S. v. Brown, 562 F.2d 1144 (9th Cir. 1978). Consequently, it could be cogently argued that the subject subpoena *duces tecum* is not an "order of a court" within the meaning of subsection (b)(11). Under such circumstances, the USCIS would be prohibited, pursuant to the Privacy Act, from granting the requested disclosure. Even if it were decided otherwise, then the issue would merely have been brought full circle inasmuch as discoverability, once again, would be governed by the relevance standard of Fed. R. Civ. P. 26(b)(1). Our position on relevance is fully set forth above.

---

[1] While it is a well established principle that, in the face of a subpoena, the Privacy Act does not create a qualified privilege, as that concept is generally understood, the protections afforded by that Act are relevant to determining the appropriate scope and manner of discovery. *See e.g. Laxalt*, 809 F.2d at 889; *U.S. v. Lake County Board of Commissioners*, 2006 U.S. Dist. LEXIS 42306 (N.D. Ind., June 7, 2006); *Marozsan v. Veterans Administration*, 1991 U.S. Dist. LEXIS 20884, No. S84-500, 1991 WL 441905, at *2-3 (N.D. Ind., June 24, 1991).

Howard Foster, Esq.
Page 4

As a result of the forgoing, the USCIS must respectfully decline to comply with the subject subpoena in the absence of a specific order of a court of competent jurisdiction directing the requested disclosure.

Sincerely,

Peter D. Gregory
Chief
Commercial and Administrative Law Division

# Exhibit C

**Matthew A. Galin**

| | |
|---|---|
| **From:** | Howard Foster |
| **Sent:** | Monday, July 23, 2007 1:04 PM |
| **To:** | Matthew A. Galin |
| **Cc:** | eric.n.banks@dhs.gov |
| **Subject:** | FW: Trollinger v. Tyson Foods subpoena 4:02-cv-23 (E.D. Tenn.) |

Mr. Banks: thanks for the response. We will bering the appropriate motion to the Magistrate Judge and serve you with it.

---

**From:** Banks, Eric N [mailto:Eric.N.Banks@dhs.gov]
**Sent:** Monday, July 23, 2007 12:59 PM
**To:** Howard Foster
**Subject:** RE: Trollinger v. Tyson Foods subpoena 4:02-cv-23 (E.D. Tenn.)

Good afternoon, Mr. Foster:

I am in receipt of your facsimile of July 20, 2007, regarding the Federal District Court (DC) subpoena served on the USCIS in connection with the above-captioned litigation. The facsimile states that you will seek a motion to compel production of the records identified in the aforementioned subpoena. You asked if the USCIS would oppose such a motion and whether this agency would agree to have the motion heard by the Magistrate Judge on this case in the Eastern District of Tennessee.

While it is the USCIS's position, generally, to avoid involvement in civil litigation between private parties and expending resources of the United States for private purposes where a substantial government interest is not implicated, the USCIS will not oppose your motion to compel nor object to the matter being heard by a Federal Magistrate Judge in the Eastern District of Tennessee. Please be advised, however, that the USCIS, under the current circumstances, does not disclose information protected under the Privacy Act of 1974 (5 USC 552a, as amended), such as that which you seek, *in the absence of a court order from a court of competent jurisdiction;* if your motion to compel is denied by the Court, then this matter will be considered closed by the USCIS without further consideration.

If there are any questions, please feel free to raise them.

Thank you,
Eric N. Banks
Attorney-Advisor
Office of Chief Counsel
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security
20 Massachusetts Avenue, N.W., Suite 4210
Washington, D.C. 20529

Phone: 202-272-1425
Fax:    202-272-1405
eric.n.banks@dhs.gov

---

**From:** Howard Foster [mailto:Fosterh@jbltd.com]
**Sent:** Thursday, July 12, 2007 3:45 PM
**To:** Banks, Eric N
**Subject:** Trollinger v. Tyson Foods subpoena 4:02-cv-23 (E.D. Tenn.)

7/24/2007

*07-341*

**FILED**

AUG 2 9 2007

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

Dear Mr. Banks:

As you know I issued a subpoena on DHS for the files on Ana Lorena Hart, employed by defendant Tyson Foods, Inc. Mr. Gregory wrote me on June 26th refusing to comply with the subpoena because, in his view, her immigration status is irrelevant. See letter at 2 ("and without more, it has been determined that there is no nexus or rational relationship between the subject of your demand, i.e., the immigration status of a corporate liasion, and the theory, as we understand it, underlying the cause of action..."). I respectfully disagree with this view. Ms. Hart's status as an illegal immigrant, or false statements concerning her status made in her deposition would be relevant to her motive to be a key figure in a RICO enterprise for the purpose of employing illegal immigrants. The fact that Tyson employs such a person in that role is not coincedental. It helps Plaintiffs demonstrate the purpose of, and existence of the enterprise.

I thereby request that you reverse your decision and produce the documents, as they are relevant, and that was the sole basis for the refusal to comply with the subpoena. I'd also like to point out that DHS has complied with a prior subpoena in this case without court intervention (for someone else's imnmigration records). We have already signed a protective order goerning all documents provided by DHS in this case.

Since discovery is coming to a close, we need a decision as soon as possible. You indicated you would respond in 2 days, i.e., on Friday July 14th. I hope it will not be necessary to seek a court order in this matter.

Sincerely,
Howard Foster
*************************************************************

All contents of this e-mail and any attachment are private &
confidential.  If received or viewed by anyone other than the
intended recipient, neither this e-mail nor any attachments, or
anything derived from these, may be used or passed on for any purpose
whatsoever, and all materials must be destroyed and the sender
notified immediately.

7/24/2007

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

BIRDA TROLLINGER, VIRGINIA BRAVO,
KELLY KESSINGER, IDOYNIA McCOY,
REGINA LEE, PATRICIA MIMS, LORI
WINDHAM, and ALEXANDER HOWLETT,
individually and on behalf of all others similarly
situated,

                             Plaintiffs,

    v.

TYSON FOODS, INC. a Corporation, JOHN
TYSON, ARCHIBALD SCHAFFER III,
RICHARD BOND, KENNETH KIMBRO,
GREG LEE, KAREN PERCIVAL, AHRAZUE
WILT, TIM McCOY

                           Defendants.

No. 4:02-cv-23

CLASS ACTION
JURY DEMANDED

R. Allan Edgar, Chief Judge

United States Magistrate Judge
William B. Mitchell Carter

## SECOND AMENDED COMPLAINT

Plaintiffs, Birda Trollinger, Virginia Bravo, Kelly Kessinger, Idoynia McCoy, Regina
Lee, Patricia Mims, Lori Windham, and Alexander Howlett, individually and on behalf of all
others similarly situated, allege as follows:

### I.    NATURE OF ACTION

1.    This is a class action brought on behalf of all persons legally authorized to be
employed in the United States ("U.S.") who have been employed by defendant Tyson Foods, Inc.
("Tyson"), reportedly the world's largest processor and marketer of poultry, as hourly wage
earners at eight of its facilities ("the facilities"), which are located in Alabama, Indiana,
Missouri, Tennessee, Texas, and Virginia.

1253190

*07-341*

**FILED**

AUG 2 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2.      The Complaint contends that all such persons have been victimized by a scheme perpetrated both by Tyson and through a conspiracy among its top management to depress the wages paid to its employees by knowingly hiring a workforce substantially comprised of undocumented illegal immigrants for the express purpose of depressing wages (hereafter "the Illegal Immigrant Hiring Scheme").

3.      The Illegal Immigrant Hiring Scheme violates the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (hereafter "RICO") and has directly and proximately caused the wages paid to plaintiffs and the class members to be substantially depressed, *i.e.*, below the level of wages Tyson would have to pay for this labor if it were not engaged in the Scheme.[1]

## II.      PARTIES AND JURISDICTION

4.      All of the named Plaintiffs are U.S. citizens and were legally authorized for employment at all relevant times. They were employed by Tyson as hourly paid workers at its chicken processing plants. Each one is a citizen of the state where he or she was employed by Tyson, as more fully set forth below in ¶ 16.

5.      Tyson is a corporation organized under the laws of the state of Delaware with its principal place of business in Arkansas.

6.      John Tyson is a citizen of Arkansas and is Tyson's Chief Executive Officer.

7.      Archibald Schaffer, III is a citizen of Arkansas and is a Senior Vice President of Tyson.

8.      Richard Bond is a citizen of Arkansas and is Tyson's Chief Operating Officer.

9.      Kenneth Kimbro is a citizen of Arkansas and is Tyson's Senior Vice President for Human Resources.

10.      Karen Percival is a citizen of Arkansas and is a Vice President of Tyson.

11.      Greg Lee is a citizen of Arkansas and is President of Tyson.

---

[1] Hereafter, this Complaint will cite the statutory sections of RICO as "§ 1961" (or whichever section applies) without the reference to Title 18 of the U.S. Code.

12.    Tim McCoy is a citizen of Arkansas and a senior executive in Tyson's Human Resources department overseeing several plants.

13.    Ahrazue Wilt is a citizen of Missouri and is Tyson's Human Resources Complex Manager for its Sedalia, Missouri facility.

14.    This Court has subject matter jurisdiction over this one-count Complaint pursuant to 28 U.S.C. § 1331 as a federal question and by § 1964(a) of RICO, the statute's jurisdictional provision for civil actions.

15.    Venue is proper in this district because one of the facilities is located in Shelbyville, Tennessee, where Plaintiff Birda Trollinger was employed and was victimized by the Illegal Immigrant Hiring Scheme.

### III.    CLASS ALLEGATIONS

16.    This action is brought, and may be maintained, as a class action pursuant to FED. R. CIV. P. 23(b)(3). Plaintiffs bring this action on behalf of themselves and all other persons, legally authorized to be employed in the U.S., who have been employed by Tyson at the facilities as hourly wage earners. Each facility is a large chicken processing plant employing at least several hundred persons. The facilities are located in Ashland, Alabama (where Plaintiff McCoy was employed), Gadsden, Alabama (where Plaintiff Mims was employed), Heflin, Alabama (where Plaintiff Lee was employed), Corydon, Indiana (where Plaintiff Kessinger was employed), Sedalia, Missouri (where Plaintiff Bravo was employed), Shelbyville, Tennessee (where Plaintiff Trollinger was employed), Center, Texas (where Plaintiff Windham was employed), and Glen Allen, Virginia (where Plaintiff Howlett was employed).

17.    The Class for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. The actual number can only be ascertained through discovery of Tyson's books and records.

18.    Among the questions of fact and law that are common to the Class are:

    a.    Whether Tyson is engaging in the Illegal Immigrant Hiring Scheme;

3

**SECOND AMENDED COMPLAINT**

b.      Whether the individual defendants have conspired to perpetrate the Illegal
        Immigrant Hiring Scheme

c.      Whether Tyson and the individual defendants are doing so in order to
        depress its employees' wages;

d.      Whether the Illegal Immigrant Hiring Scheme has caused class members'
        wages to be depressed;

e.      Whether the Illegal Immigrant Hiring Scheme violates the Immigration
        and Nationality Act and RICO; and

f.      Whether Tyson should be enjoined from conducting further racketeering
        activity and whether the individual defendants should be barred from
        further association with Tyson.

19.     Plaintiffs' claims are typical of those of the Class in that they arise from the
damages they have suffered as a result of the Illegal Immigrant Hiring Scheme. Plaintiffs seek
no relief that is antagonistic to or adverse to other Class members.

20.     Plaintiffs are committed to the vigorous prosecution of this action, and have
retained counsel who are competent in the prosecution of class actions, RICO and complex
litigation. Plaintiffs' counsel have prosecuted this case since 2002, successfully obtaining a
favorable decision from the Sixth Circuit Court of Appeals, and intend to continue to adequately
protect and represent the interests of the Class.

21.     Questions of law or fact common to the Class predominate over issues affecting
individual Class members. A class action is the only appropriate method for the fair and
efficient adjudication of this controversy for the following reasons, among others:

4

**SECOND AMENDED COMPLAINT**

a.     The individual amounts of damages involved, while not insubstantial, are generally not large enough to justify individual actions;

b.     The costs of individual actions would unreasonably consume the amounts that would be recovered;

c.     Individual actions would unduly burden the judicial system; and

d.     Individual actions brought by Class members would create a risk of inconsistent results and would be unnecessarily duplicative of this litigation.

22.     Plaintiffs anticipate no difficulty in the management of this action because the evidence proving the Illegal Immigrant Hiring Scheme is ascertainable through discovery, the identities of the Class members are known to Tyson, and damages can be calculated to a reasonable certainty through expert testimony.

A.     **The Illegal Immigrant Hiring Scheme: Tyson Requires Its Hiring Personnel To Be Willfully Blind And Subvert The Law Against Hiring Unauthorized Immigrants**

23.     The Immigration Reform and Control Act (hereafter "IRCA"), 8 U.S.C. § 1324(a) *et seq.*, and its accompanying regulations, require employers to verify, under the penalty of perjury, that they have examined documents produced by each employee which establish the employee's authorization for employment in the U.S. Specifically, the employer must verify the documents are "genuine" and "relate" to the person tendering them. 8 C.F.R. § 274a.2(b)(1)(i)(B)(ii)(A) (hereafter "the verification requirement")

24.     Tyson is engaged in a long-term pattern and practice of violating IRCA and § 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324(a)(3)(A), which like IRCA, prohibits the employment of unauthorized immigrants. Tyson does so in every possible way short of outright refusal to comply at all. These subversions are:

a.     Signing Employment Eligibility Verification Forms (I-9 forms) in mass quantities, before any documents have been inspected, signing the forms

5

more than three days after new hires have been employed, and signing based upon review of copies of documents presented, not the original documents.[2]

b.      Prohibiting hiring personnel from taking into account obvious facts which indicate that documents do not relate to the people tendering them, particularly the inability to speak English. As Tyson knows, persons who do not speak English cannot, as a practical matter, be U.S. citizens or lawful permanent residents. IRCA does not permit employers to engage in willful blindness to the truth. (This is referred to throughout this Complaint as the "Willful Blindness Policy.")

c.      Rehiring persons whom it previously hired under different names, usually after a short absence during which they have acquired a new, stolen identity.

d.      Hiring workers who appear decades younger than the pictures that appear on their stolen identity documents.

e.      Using temporary employment placement services to hire illegal immigrants and then "loan" them to Tyson for a fee.

f.      Giving employees leave to "get good documents" after Tyson has been informed their employment authorization documents actually belong to someone else. These employees are then rehired under new identities, but often retain their seniority level or "points." Tyson supervisors will often ask these employees, "Who are you this week?"

g.      Giving newly hired workers money to obtain housing, food, and other living supplies (such as bedding and sheets), as well as providing transportation to and from the Tyson facility, which when coupled with

---

[2] The I-9 form is the document designed by the federal government to be used in complying with IRCA. 8 C.F.R. § 274a.2(a).

6

their inability to speak English, would put any reasonable employer on notice that these workers are not U.S. citizens or lawful permanent residents, as their "documents" indicate, and are therefore presenting stolen documents.

25.    The Willful Blindness Policy was implemented by co-conspirator William Jaycox, Tyson's Senior Vice President of Human Resources, in the late 1980's. (However, Mr. Jaycox is not named as a defendant.) The Policy has been approved by all of the other co-conspirators and is still in existence today, despite Tyson's sordid history of legal troubles arising from its subversion of IRCA.

**B.    Tyson Uses The Basic Pilot Program As A Fig Leaf To Subvert IRCA**

26.    Since 1998, Tyson has used the federal government's Basic Pilot program in order to give the appearance of complying with IRCA while the company is actively subverting the law.

27.    Basic Pilot, an internet verification program, confirms that government-issued eligibility documents were actually issued and the name of the person to whom they were issued ("the issuee"). However, it does *not* establish that the person presenting the documents is the issuee. The employer must still comply with its IRCA's verification requirement. Tyson does not do this. Thus, Tyson is abusing Basic Pilot to subvert its IRCA obligations, turning the program into a fig leaf to ward off future raids and enforcement actions.

**C.    The "Dalia Gutierrez" Workers**

28.    The result of Tyson's policies of subversion and Willful Blindness is the knowing employment of thousands of illegal immigrants using stolen identity documents. Typical is an illegal worker in Tyson's Corydon, Indiana facility. She entered the U.S. illegally from Mexico and then illegally assumed the name, social security number and birth certificate of a U.S. citizen named Dalia Gutierrez.

7

29.     "Dalia Gutierrez," knowing of Tyson's noncompliance with the verification requirement and its Willful Blindness Policy, presented her stolen documents to Tyson. Tyson employed her in 2001 after she had "passed" the Basic Pilot program.

30.     Thus, pursuant to the Willful Blindness Policy, Tyson's Human Resources manager ignored her inability to speak English and falsely "verified" under oath that her documents "related" to her.

31.     Subsequently, Tyson learned from other employees at the facility that "Dalia Gutierrez" was an illegal immigrant. She was "investigated" (pursuant to the company's "protocol" for these inquiries) and "passed" by simply producing another stolen document, a copy of the real Dalia Gutierrez's birth certificate, issued by Starr County, Texas. As indicated, the real Dalia Gutierrez resides in Texas. The fake "Dalia Gutierrez," employed by Tyson, had been illegally using her social security number since her employment in 2001. Accordingly, Tyson's identity "investigation" was a farce designed not to obtain the truth, but to continue to obscure what it did not want to know, *i.e.*, that its employee is an illegal immigrant. "Dalia Gutierrez" remains employed by Tyson.

32.     The real Dalia Gutierrez has received bills from a hospital in Corydon, Indiana, where the illegal Tyson worker sought treatment with her stolen social security number.

33.     Tyson has hired hundreds of "Dalia Gutierrez" workers at each of the facilities each year since 1996 in the same manner. In every case, Tyson hiring personnel knew that the workers were unauthorized for employment. However, Tyson hiring personnel employed the workers, pursuant to the Illegal Immigrant Hiring Scheme, established by the individual defendants.

### IV. TYSON HARBORS ILLEGAL IMMIGRANTS

34.     Numerous Tyson facilities have been raided and/or investigated by federal immigration authorities. Rumors of raids are common. When such rumors spread, Tyson

**SECOND AMENDED COMPLAINT**

supervisors tip off known illegal immigrants and recommend they leave the plant. This is harboring.

35.    Tyson rents trailers and other cheap housing units for its illegal workers, typically through front companies. It uses fronts because many landlords refuse to rent housing to Tyson, knowing it will be used to harbor illegal immigrants. This is particularly prevalent in the area of northern Alabama known as "Little Tijuana," where the facilities in that state are located. This is another widespread method of harboring illegal immigrants.

## V.    THE RACKETEERING ACTS

### A.    "Knowingly Hiring" Illegal Immigrants

36.    In order to perpetrate the Illegal Immigrant Hiring Scheme, Tyson has knowingly hired more than 10 unauthorized, illegal immigrants each year, since the enactment of 8 U.S.C. § 1324(a)(3)(A), in 1996, at each of the facilities. (Tyson may have acquired a few of the facilities after 1996. With respect to those facilities, Plaintiffs allege Tyson began knowingly violating this section as soon as it acquired these facilities.)

### B.    "Harboring" Illegal Immigrants

37.    Plaintiffs also allege that Tyson has violated 8 U.S.C. § 1324(a)(1)(A)(iii) by "harboring" unauthorized, illegal immigrants with knowledge or reckless disregard that each entered the U.S. illegally. Tyson's employment of each illegal immigrant constitutes "harboring." Moreover, as indicated, Tyson has shielded illegal immigrants from detection by federal immigration officials by warning them of possible raids and providing them with housing. Each of these acts constitutes "harboring."

38.    These two federal crimes are provisions of § 274 of the Immigration and Nationality Act and are made predicate offenses by § 1961(1)(F) of RICO.

9

**SECOND AMENDED COMPLAINT**

## VI.  THE RICO ENTERPRISES

**A.    The Temporary Employment Services Enterprises**

39.    Tyson formed ongoing associations with temporary employment services for the purpose of supplying hourly paid workers to each of the facilities.  These workers were both legal and illegal (though mostly illegal).  They operated under written contracts with Tyson which provided that the services would insure that the workers were authorized for employment under IRCA.  However, pursuant to the Illegal Immigrant Hiring Scheme, Tyson knew this promise would not be kept and that most of the workers hired would be illegal.  The illegality of most of the workers was made apparent to Tyson when its senior management personnel reviewed the I-9 forms and saw they were improperly completed.  Additionally, illegal workers made admissions to Tyson supervisors indicating they were unauthorized for employment.  At all relevant times, Tyson management knew the workers supplied by the temporary employment services were driving down wages at the facilities below the level Tyson was able to depress them on its own.

40.    These relationships with the temporary employment services were in existence for extended periods of time, typically from 1998-2001, and resulted in the placement of at least 100 workers at each facility per year.  (Plaintiffs are unable to be more specific because Tyson has refused to produce the relevant I-9 forms.  Additionally, Plaintiffs have sought an order from this Court to release these documents, which were produced by the services to the grand jury which indicted Tyson for employing illegal immigrants in 2001.  The Court has not yet ruled on Plaintiffs' Motion.)

41.    At all relevant times, the temporary employment services maintained their own legitimate business operations in their respective states.  They were not Tyson's agents.  Tyson paid each a fee for each worker supplied to the company.  The temporary employment services and Tyson maintained close relationships during the relevant period including regular contact and supervision by Tyson.  In some cases, the services opened hiring offices inside Tyson's plants to facilitate the hiring process.  Tyson did not charge them rent for the office space.

10

42.    Tyson reviewed the I-9 forms completed by the temporary employment services: Tandem Staffing Solutions, Inc., Ready Staffing, Inc. and Outsource International (which supplied workers to the Corydon, IN facility); Labor Pro Temporary Services and USA Staffing, Inc. (which supplied workers to the Glen Allen, VA facility); Oxford Enterprises, Inc. and InStaff Personnel (which supplied workers to the Ashland, AL facility); Kavanaugh Group Temporary and Snelling Personnel Service (which supplied workers to the Center, Texas facility); Tandem Staffing and Outsource International (which supplied workers to the Sedalia, MO facility); and Randstad LTD. (which supplied workers to the Shelbyville, TN facility). Additionally, pursuant to the Willful Blindness Policy, Tyson HR management at each facility knew that most of the workers placed by the services spoke no English and were therefore likely to be unauthorized for employment. Tyson management acquiesced in this illegal hiring.

43.    Accordingly, Plaintiffs allege that each of the temporary employment services named in the previous paragraph formed an association-in-fact RICO enterprise, pursuant to § 1961(4), with Tyson for the purpose of recruiting workers for Tyson. Tyson participated in the affairs of each of these association-in-fact enterprises by paying each service fees for what it knew to be a pool of primarily illegal immigrant labor. Despite language to the contrary in the written contracts, which Tyson used in order to distance itself from the illegal hiring, Tyson was the employer of the workers they recruited. Tyson controlled every aspect of their work, and in reality, paid their wages. Tyson also paid each service a fee for its services in procuring low-wage, mostly illegal immigrants.

44.    Each of these association-in-fact RICO enterprises affected interstate commerce. Tyson participated in the affairs of each enterprise through a pattern of racketeering activity, knowingly employing and harboring more than 10 illegal immigrants per year. Thus, Tyson is a RICO "person" pursuant to § 1961(3).

45.    Plaintiffs were proximately damaged as a direct result of the pattern of racketeering activity perpetrated by Tyson through each of these association-in-fact enterprises

11

**SECOND AMENDED COMPLAINT**

because this pattern of racketeering activity caused the wages paid by Tyson to them to be depressed below what they would have been in a labor market consisting only of legal workers.

**B.    The Tyson Enterprise**

46.    The individual defendants have entered into a conspiracy, as detailed above, to carry out the Illegal Immigrant Hiring Scheme. Additionally, each member of the conspiracy has personally agreed to, and has furthered, the conspiracy in some important way on an ongoing basis. Defendants John Tyson and Lee have approved the Willful Blindness Policy and keep it in place. Defendants Percival, Kimbro and Lee set compensation levels for hourly paid workers at the facilities which they know are too low to attract sufficient numbers of legal workers to staff the facilities. Defendants John Tyson, Lee, and Kimbro approve of, and participate in, the association with the temporary employment services and the Hispanic groups (Tyson's relationships with these groups are detailed, *infra*). Defendant Schaffer oversees the day-to-day relationships with the Hispanic groups and approves the payments to them. Defendant Wilt carries out the Willful Blindness Policy at her facility and rents housing to illegal immigrants. Defendant McCoy enforces the Willful Blindness Policy at several facilities, reviews I-9 forms which are improperly completed, and then takes no action, thereby ratifying the pattern and practice of I-9 subversion described above. He also recommended, to a meeting of 200 Tyson Human Resources managers, that they hire illegal workers to depress wages and labor costs.

47.    Each of these individual defendants is a person pursuant to § 1961(3). Each of the individual defendants has personally agreed to the objective of carrying out the Illegal Immigrant Hiring Scheme and that the Scheme would be perpetrated by the members of the conspiracy. In addition, each co-conspirator knew that the Scheme would entail a pattern of racketeering activity, the ongoing employment of thousands of illegal immigrants, as described above. Additionally, each member of the conspiracy agreed that the conspiracy would be undertaken by participating in Tyson's employment practices and policies. Each co-conspirator is in Tyson's management or participating indirectly in the company's management.

12

**SECOND AMENDED COMPLAINT**

48.    All of the conspirators agreed that the Illegal Immigrant Hiring Scheme would be conducted through Tyson, which is an enterprise, pursuant to § 1961(4), affecting interstate commerce. Finally, all of the conspirators agreed to the conspiracy to enrich themselves by enriching Tyson at the expense of Plaintiffs, whose wages they were depressing.

## C.    The Hispanic Groups Association-in-Fact Enterprise

49.    After being indicted for employing illegal immigrants in 2001, Tyson faced a crisis in its relations with the Hispanic community, which correctly perceived Tyson was exploiting its Hispanic workers in various ways including the purchase of aliens smuggled to the U.S. from Mexico and Guatemala for work at its facilities and through the use of temporary employment services. Fearful of a Hispanic-led boycott of its products and a recommendation to its membership not to work for Tyson, the company began an aggressive campaign to placate two major Hispanic groups, League of United Latin American Citizens ("LULAC") and National Council of La Raza ("NCLR").

50.    Tyson formed long-term partnerships with these groups.    Pursuant to the partnerships, Tyson gives them significant sums of money, conducts regular meetings with their leadership and cooperates in areas of common interest.

51.    Defendant Schaffer disburses the money to the groups on a periodic basis. He has also directed Tyson managers at the plants to make donations to the groups' local chapters, which they do.

52.    The common purposes and goals the groups and Tyson jointly advance are both legitimate and illegitimate. The legitimate purposes are advancing the education and welfare of the Hispanic community in general, and more particularly in the communities where Tyson has processing plants.

53.    However, the partnerships with the groups also advance a crucial and illegitimate objective: carrying out the Willful Blindness Policy without the use of alien smuggling or temporary employment services, as requested by the groups. Tyson acceded to these requests.

13

**SECOND AMENDED COMPLAINT**

Additionally, Tyson has made other adjustments to the Willful Blindness Policy at the behest of the groups.

54.    Tyson's partnerships with these groups have been extremely close for the last three years and are ongoing. Meetings have included defendants John Tyson, Kimbro, Schaffer, and Lee. Tyson has hired a full-time liaison, Ana Hart, to maintain and promote the partnerships. She is engaged in daily contact with the leadership of the groups and some of their chapters, particularly the chapters in Northwest Arkansas. Tyson has directed at least three of its employees, including Ms. Hart, to speak for the company, representing its views, in their capacity as chapter members of one of the LULAC chapters.

55.    Thus, Tyson, LULAC and NCLR have formed an association-in-fact RICO enterprise pursuant to § 1961(4) in 2001 which has been in continuous existence ever since. This enterprise affects interstate commerce.

56.    Tyson participates in the affairs of this enterprise in numerous ways, as described. Most significantly, Plaintiffs allege it participates by carrying out the Willful Blindness Policy, which is essential to the Illegal Immigrant Hiring Scheme, in the way LULAC and NCLR prefer. Thus, the association-in-fact enterprise is responsible for the manner in which the Illegal Immigrant Hiring Scheme has been executed since 2001. (However, the groups are not defendants.)

## VII.    THE DEFENDANTS HAVE CONSPIRED TO VIOLATE RICO

### A.    The Individual Defendants

57.    The individual defendants, John Tyson, Richard Bond, Kenneth Kimbro, Karen Percival, Tim McCoy, and Ahrazue Wilt have violated § 1962(d) of RICO by conspiring to violate § 1962(c) of RICO. Their agreement, as detailed, was and is, to execute the Illegal Immigrant Hiring Scheme. They have all knowingly and willfully entered this conspiracy, agreeing that members of the conspiracy, which also include unnamed individuals conducting hiring at the Tyson facilities, would, pursuant to the policies they had established, hire hundreds

14

of illegal immigrants as hourly-paid workers for the purpose of depressing wages. Each co-conspirator also agreed that the RICO predicate acts constituting the Illegal Immigrant Hiring Scheme, detailed above, would be committed through Tyson Foods, Inc., a RICO enterprise. As indicated, this racketeering activity is open, ongoing and will not stop without judicial intervention.

58.    Each co-conspirator is jointly and severally liable for all of the damages to the Plaintiffs and the amount of money their wages were depressed during the entire class period, which began in 1998 and continues through trial.

**B.    Tyson Foods, Inc.**

59.    Tyson Foods, Inc., in addition to being the enterprise for the individual defendants detailed above, is also a RICO defendant. It has violated § 1962(c) of RICO by committing a pattern of racketeering activity, the Illegal Immigrant Hiring Scheme, through the temporary employment service association-in-fact enterprises and the Hispanic groups association-in-fact enterprise (Tyson, LULAC and NCLR). As indicated, this racketeering activity is open, ongoing, and will not stop without judicial intervention.

## VIII.    THE PLAINTIFFS HAVE ALL BEEN DAMAGED BY THE DEFENDANTS THROUGH THE VARIOUS RICO ENTERPRISES

60.    As stated, Plaintiffs have been proximately damaged by all the defendants (Tyson and the individual co-conspirator defendants) through the various RICO enterprises by the depression of their wages as a result of the Illegal Immigrant Hiring Scheme. At all relevant times the hourly wages earned by Plaintiffs were depressed below what they would have been had Tyson and the individual defendants not been executing the Illegal Immigrant Hiring Scheme.

## IX.    PRAYER FOR RELIEF

61.    Plaintiffs demand judgment and other relief as follows:

    a.    Certification of the Class pursuant to FED. R. CIV. P. 23(b)(3);

15

b.      Judgment in an amount equal to three times the damage caused the putative Class by Tyson's racketeering activity, the Illegal Immigrant Hiring Scheme, pursuant to 18 U.S.C. § 1964(c) against the defendants: Tyson Foods, Inc. and the co-conspirator individual defendants named above;

c.      Preliminary and permanent injunctions enjoining Tyson from any further racketeering activity or any further association with the individual defendants; ordering the individual defendants to divest themselves of any stock and other interests they have in Tyson Foods, Inc. and barring them from any further involvement in the poultry industry;

d.      Appropriate attorneys' fees, pursuant to 18 U.S.C. § 1964;

e.      Trial by jury, pursuant to FED. R. CIV. P. 38; and

f.      For any other relief the Court deems just and proper.


DATED: June 24, 2005

                                Respectfully submitted,
                                BIRDA TROLLINGER, *et al.,* Plaintiffs


                                s/**HOWARD FOSTER**
                                Johnson & Bell, Ltd.
                                55 E. Monroe Street,  Suite 4100
                                Chicago, IL 60603
                                (312) 372-0770
                                fosterh@jbltd.com

                                William G. Colvin (TN BPR # 006733)
                                1100 SunTrust Bank Bldg.
                                736 Market Street
                                Chattanooga, TN 37402
                                (423) 265-2214
                                bcolvin@swgwlaw.com

                                *Attorneys for the Plaintiffs*


                                    16

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2005, a copy of the foregoing, Second Amended Complaint, was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/Howard Foster
Howard Foster
*Pro Hac Vice*
Johnson & Bell, Ltd.
55 E. Monroe Street
Suite 4100
Chicago, IL 60603
(312) 372-0770
Fax: 312-372-9818
fosterh@jbltd.com

1253190

17

**SECOND AMENDED COMPLAINT**