UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BIRDA TROLLINGER, et al.             )
                                     )
            Petitioners              )
                                     ) Miscellaneous No. 07-mc-0341 (RJL)
     v.                              )
                                     )
TYSON FOOD, INC., et al.             )
                                     )
            Respondents.             )
                                     )

RESPONDENT USCIS'S OPPOSITION TO MOTION TO COMPEL
PRODUCTION OF RECORDS AND MOTION TO DISMISS THE ACTION

On November 6, 2007, Plaintiffs filed a second amended motion to compel the U.S. Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security ("DHS") to comply with a subpoena in aid of a civil action in the United States District Court for the Eastern District of Tennessee. Respondent USCIS, hereby submits its opposition to Plaintiffs' motion to compel and its motion to dismiss the action.

**INTRODUCTION**

By facsimile transmittal dated June 21, 2007, Plaintiffs' counsel, Mr. Howard Foster of Johnson and Bell Ltd., sent to the USCIS a subpoena under cover letter dated April 24, 2007, commanding the production of any "*applications for residency status and documents and alien registration cards and number*" pertaining to "*Lorena Hart; aka Ana Leland; aka Ana Moreno Ovledo; aka Ana Hart.*" Plts. Mt to Compel, Exhibit A. By letter dated June 26, 2007, the USCIS responded to the subject subpoena, refusing to disclose the requested information, documents, and records, to the extent that such existed, due to the absence of relevancy. Relying upon Plaintiffs' explanation regarding the significance of the requested information to the underlying RICO litigation in which Plaintiffs are engaged, the USCIS determined that relevancy, as contemplated by Rule

26(b)(1) of the Federal Rules of Civil Procedure, was lacking and, accordingly, declined to honor the subject demand for production.  Moreover, the USCIS advised that any such information under USCIS control would be maintained in a Federal system of records known as "Alien File/Central Index System (A-file/CIS – Justice/INS 001A)" which is protected from indiscriminate disclosures pursuant to the Privacy Act of 1974, as amended, 5 U.S.C. §552a.  *See* Exhibit 1.

On August 29, 2007, Plaintiffs filed a Motion to Compel the U.S. Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security ("DHS") to comply with a subpoena in aid of a civil action in the United States District Court for the Eastern District of Tennessee.  Respondent USCIS opposed that motion.  Respondent USCIS Response to Motion to Compel.  As a result, the "[m]otion was not pursued" by Plaintiffs and "[i]nstead Plaintiffs issued a new subpoena on Respondent USCIS on September 24, 2007." Plt Second Amended Motion to Compel ("Second Amended MTC"), p.1.  The second subpoena commanded the production of "[a]ll documents related to the immigration status, residency status, and/or work authorizations status" of over 60 individuals including Ms. Hart.  Second Amended MTC, Ex. A.

The Plaintiffs filed a second motion to compel on October 24, 2007 and Respondent filed a motion to strike the second motion to compel on the grounds that the Respondents had placed on the public record the full birth date and the social security numbers of over 60 individuals.  The Court granted the motion to strike.  On November 6, 2007, the Plaintiffs filed their second amended motion to compel.  On November 9, 2007 the Respondent sent a letter to the Plaintiffs' counsel objecting to the second subpoena.  Ex. 1.  The Respondent objected to the production of documents in the same manner as

2

its previous objections - on the grounds of relevancy and pursuant to the Privacy Act. Ex. 2.

## ARGUMENTS

**A.  The requested information pertaining to Ms. Hart is irrelevant to the District Court action**

*1)  Relevancy under Rule 26(b)(1)*

The U.S. Department of Homeland Security (DHS) has adopted *Touhy* regulations that set forth the procedures to be followed with respect to the service of, and response to, subpoenas for official information, records or action directed at the DHS or its constituent units. *See United States Ex Rel. Touhy v. Ragen, Warden et al.*, 430 U.S. 462 (1951); 6 C.F.R. Subpart C. Section 5.48 of the sets forth outlines functions that a DHS component must consider in determining whether to comply with a demand or request for agency records or information. *See* 6 C.F.R. § 5.48. Among any other pertinent considerations, the regulations direct Department officials and attorneys to consider whether compliance is appropriate under the applicable rules of discovery or the applicable rules of procedure governing the case or matter in which the demand arose. *See* 6 C.F.R. § 5.48(a)(1).

Under the Fed. R. Civ. P. 26(b)(1), parties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible at trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). The test of discoverability is the relevance standard of Rule 26(b)(1). *See e.g. Paul Laxalt v. C.K. McClatchy, et al.*, 809 F.2d 885 (D.C. Cir. 1987); *Forrest v. U.S.*, No. 95-3889, 1996 U.S. Dist. LEXIS 4589, at *4 (E.D. Pa., April 11, 1996). If official information is sought

3

by request or demand, the DHS regulations require the party seeking such release to set forth, with as much specificity as possible, the nature and relevance of the official information sought in the context of the cause of action from which the demand arose. *See* 6 C.F.R. § 5.45(a). The purpose for this regulatory requirement is to obtain, for the record, sufficient information to arrive at a tenable determination regarding relevance as contemplated by Rule 26(b)(1).

2)      *Plaintiffs have not shown relevancy pursuant to Rule 26(b)(1)*

In compliance with subsection 5.45(a) of the regulations, Plaintiffs' subpoena was accompanied by a letter including background information regarding the subpoena *See* Second Amended MTC, Exhibit A, Plaintiffs' September 24, 2007 letter. The class action that gave rise to the instant demand is *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23. The letter described the class action as against Tyson Foods Inc. and its senior executives for depressing the wages of the class of legally employed Tyson employees by employing large numbers of illegal immigrants. Id., p. 1. Ms. Hart is a former Tyson Foods employee who worked "as a liaison to a number of local and national Hispanic Rights Groups which Plaintiffs alleged have formed a RICO enterprise with Tyson Foods in order to hire illegal aliens." Id., p. 1-2.

Based upon information provided in the above-quoted cover letter, the USCIS determined that, without more, no nexus or rational relationship could be found between the subject of Plaintiffs' demand for information regarding Ms. Hart and Plaintiffs' theory underlying the cause of action fashioned in *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23.

4

Discovery has ultimate and necessary boundaries. *See e.g. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed.2d 253 (1978). Agencies are admonished that the relevancy requirement "should not be misapplied so as to allow fishing expeditions in discovery." *See Zenith Electronics Corporation v. Exzec, Inc.*, 1998 U.S. Dist. LEXIS 215, No. 93 C 5041, 1998 WL 9181, at*2 (N.D. Ill. Jan. 5, 1998). Plaintiffs have failed to demonstrate the relevance of Ms. Hart's immigration status to the underlying litigation against Tyson Foods or how disclosing that status could lead to the discovery of admissible evidence. As Respondent USCIS queried the Plaintiffs in its opposition letter, "Would Tyson Foods be more or less likely to be found as engaging in a RICO enterprise based upon Ms. Hart's immigration status?" Ex. 1, p.3. the immigration status of a lone corporate employee, Ms. Hart, appears wholly irrelevant to establishing the existence of an ongoing RICO enterprise engaged by Tyson Foods, Inc. Therefore, the Court should deny Plaintiffs' motion to compel the records pertaining to Ms. Hart.[1]

**B.     The Privacy Act prevents disclosure of the requested information**

DHS regulations require Department officials and attorneys to consider whether compliance with a demand for access is appropriate under the relevant substantive law concerning privilege or the disclosure of official information. *See* 6 CFR § 5.48(a)(2). The demanded records, to the extent that they exist, would be maintained in the USCIS system of records known as "Alien File/Central Index System (A-file/CIS – Justice/INS 001A)." *See* 72 Fed. Reg. 1755 (Tuesday January 16, 2007). This system of records is

---

[1] The Respondent does not oppose on the grounds of relevance the requested information pertaining to the over 60 other individuals named in Exhibit A of the subpoena. Second Amended MTC, Ex. A.

5

protected from indiscriminate disclosures pursuant to the Privacy Act of 1974, as amended, 5 USC 552a. *See* Ex. 1, p. 3.

The Privacy Act strictly prohibits the disclosure of information assigned to this system of records with few exceptions. *See* 5 U.S.C. § 552a(b). The relevant exceptions would be: pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains; for a "routine use" as defined by the Privacy Act under subsections 552a(a)(7) and (e)(4)(D), respectively; required under the Freedom of Information Act ("FOIA"), 5 USC 552; or pursuant to the order of a court of competent jurisdiction, 5 USC 552a(b)(11). *See* 5 U.S.C. § 552a(b).

None of the exceptions to the Privacy Act are present here. Plaintiffs failed to produce the necessary written consent of Ms. Hart, or any of the other over 60 individuals to whom the information the Plaintiffs seek pertain. In fact, Ms. Hart opposes the release of the information and has filed an opposition to the second amended motion to compel. *See* Hart Opposition. The release of the information requested by Plaintiffs is not authorized by the system of records' published routine uses. *See* 72 Fed. Reg. at 1757. Neither is the release required by the FOIA nor ordered by a court of competent jurisdiction.

1)      *FOIA*

Under the FOIA, the subject record would be entitled to the protection of subsection (b)(6) of that Act, which exempts from release "*personnel and medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.*" *See* 5 USC 552(b)(6). The U.S. Supreme Court has firmly held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly.

6

*See U.S. Department of State v. Washington Post Co.*, 456 U.S. 595, 599-603 (1982). The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." *Id.* at 601 (citing H.R. Rep. No. 89-1497, at 11(1966)). The Court made clear that all information that "applies to a particular individual" meets the threshold requirement for FOIA Exemption 6 protection. *Id.* at 602.

Consistent with the Court's interpretation of the phrase "similar files," the immigration status of a specifically identified Tyson Foods employee, meets the threshold of Exemption 6, to the extent that it exists, and is entitled to protection from indiscriminate disclosures pursuant thereto.

2)      *No Court order*

Here, the subpoena *duces tecum* is not an "order of a court" within the meaning of the exception to the Privacy Act 5 USC 552a(b)(11). That is, to be an "order of a court" recognized under subsection (b)(11), the order directing disclosure must specifically have been ordered and issued by a court. *John Doe v. Joseph DiGenova et al.*, 779 F.2d 74 (D.C. Cir. 1985) ("subpoenas-grand jury or otherwise-do not qualify as "order[s] of a court of competent jurisdiction" under 5 U.S.C. § 552a(b)(11), unless they are specifically approved by a court"); *Stiles v. Atlanta Gas Light Company*, 453 F. Supp 798 (N.D. Ga. 1978); *U.S. v. Brown*, 562 F.2d 1144 (9th Cir. 1978). Therefore, the Plaintiffs did not present an order of a court sufficient to mandate production of the requested records, if they exist.[2]

---

[2] Moreover, the Court should not order release because, as discussed earlier, the information pertaining to Ms. Hart is not relevant to the lawsuit at issue, *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23.

7

**CONCLUSION**

For the foregoing reasons, the Respondent USCIS respectfully requests that the Court dismiss the action and deny Plaintiffs' Motion to Compel Production of Records.

Date: December 4, 2007        Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.

        /s/
_____
ANDREA McBARNETTE, D.C. Bar # 483789
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

09/04/2007 11:25 FAX  312 372 9818        JOHNSON & BELL LTD                    ☐019/035

Office of the Chief Counsel

U.S. Department of Homeland Security
20 Massachusetts Avenue, N.W. Room 4210
Washington, DC 20529



U.S. Citizenship
and Immigration
Services

June 26, 2006

Howard Foster, Esquire
Johnson & Bell
Attorneys-at-Law
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603-5404

Re: *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23
    Eastern District of Tennessee

Dear Mr. Foster:

This responds to your letter of April 24, 2006, addressed to Patrick Kernan, Office of Chief Counsel, U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS), forwarding a subpoena commanding the production of documents from USCIS files pertaining to Lorena Hari, among other aliases.

As you are aware, the DHS has adopted *Touhy* regulations that set forth the procedures to be followed with respect to the service of, and responses to, subpoenas for official information, records, or action directed at the DHS or its constituent units. See *United States Ex Rel. Touhy v. Ragen, Warden, et al.*, 340 US 462 (1951); 6 CFR Subpart C. Section 5.48 of the regulations outlines factors that a DHS component must consider in determining whether to comply with a demand or request for agency records and information. See 6 CFR § 5.48. Among any other pertinent considerations, the regulations direct Department officials and attorneys to consider whether compliance is appropriate under the applicable rules of discovery or the applicable rules of procedure governing the case or matter in which the demand arose. See 6 CFR § 5.48(a)(1).

To announce your demand for access to USCIS records, you elected to issue a subpoena *duces tecum* under the auspices of the U.S. District Court for the District of Columbia. Your demand, therefore, is governed by Rule 26(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 26(b). Under Rule 26(b)(1), parties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible at trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

The test of discoverability is the relevance standard of Rule 26(b)(1). See e.g. *Paul Laxalt v. C.K. McClatchy, et al.*, 258 U.S. App. D.C. 44; 809 F.2d 885 (D.C. Cir. 1987); *Forrest v. U.S.*, No. 95-3889, 1996 U.S. Dist. LEXIS 4589, at *4 (E.D. Pa., Apr. 11, 1996). If official information is sought by request or

www.uscis.gov


GOVERNMENT
EXHIBIT
1

03/04/2007 11 26 FAX   312 372 9818        JOHNSON & BELL LTD                    @015/038

Howard Foster, Esq.
Page 2

demand, a DHS regulation requires the party seeking such release to set forth, with as much specificity as possible, the nature and relevance of the official information sought in the context of the cause of action from which the demand arose. *See* 6 CFR § 5.45(a). The purpose for this regulatory requirement is to obtain, for the administrative record, sufficient information to arrive at a tenable determination regarding relevance as contemplated by Rule 26(b)(1).

In compliance with subsection 5.45(a) of the regulations, the subject subpoena was accompanied by a letter "included to give [the USCIS] some background information to the enclosed subpoena in order to help ... identify the relevant documents." *See* April 24, 2007, cover letter, 1st paragraph, 1st sentence. The action which gave rise to the instant demand is described in that letter as "civil RICO litigation ... brought on behalf of legal Tyson Foods employees whose wages have been depressed because of Tyson's hiring scheme of employing illegal aliens." The paragraph aimed specifically at establishing the relevance of the demanded information warrants quoting in full:

> Ms. Hart currently works for Tyson Foods as a liaison to a number of local and national Hispanic Rights Groups, which we allege have formed a RICO enterprise with Tyson Foods in order to hire illegal aliens. She claims to be a legal permanent resident, though the facts surrounding her claim appear to be suspect. *For this reason, the immigration status is relevant to our case* as we move forward and investigate her relationship with a number of these Hispanic Rights Groups. (Emphasis added.)

Based upon information provided in the above-quoted cover letter, and without more, it has been determined that there is no nexus or rational relationship between the subject of your demand; i.e., the immigration status of a corporate liaison, and the theory, as we understand it, underlying the cause of action fashioned as *Trollinger v. Tyson*, i.e., Tyson Foods has formed a RICO enterprise with local and national Hispanic Rights Groups in order to hire illegal aliens. If our understanding of your theory is correct, Tyson Foods could have formed a RICO enterprise with local and national Hispanic Rights Groups *regardless* of Lorena Hart's immigration status. Stated another way, how would it affect civil RICO litigation if it were conclusively shown that Ms. Hart is a legal permanent resident? Would Tyson Foods be more or less likely to be found as engaging in a RICO enterprise based upon Ms. Hart's immigration status? It would appear that no matter how the questions are cast or phrased, the immigration status of a lone corporate employee, Ms. Hart, without more, would be wholly irrelevant to establishing the existence of an ongoing RICO enterprise engaged in by Tyson Foods, *inter alia*. Issuing a subpoena to Tyson for all employee records would likely yield far more productive, and relevant, results.

In reaching this determination, the relevancy of the demanded information was liberally construed in keeping with the proposition that relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, discovery has ultimate and necessary boundaries. *See e.g. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed.2d 253 (1978). Agencies are admonished that the relevancy requirement "should not be misapplied so as to allow fishing expeditions in discovery." *Zenith Electronics Corporation v. Exzec, Inc.*, 1998 U.S. Dist. LEXIS 215, No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998). In assessing relevance, we confined ourselves to interpreting and analyzing only that information with which we were provided, and were unable to discern the relevance of Ms. Hart's immigration status to the underlying litigation or how disclosing that status could lead to the discovery of admissible evidence.

DHS regulations also require Department officials and attorneys to consider whether compliance with such a demand for access is appropriate under the relevant substantive law concerning privilege or the disclosure of official information. 6 CFR 5.48(a)(2). Obviously, if the information demanded is not subject to any privilege or statutory prohibitions against disclosure, and is the type readily available to any member of the

www.uscis.gov

09/04/2007 11:26 FAX    312 372 9818          JOHNSON & BELL LTD                            ☒018/035

Howard Foster, Esq.
Page 3

general public, then there would be no basis for denying access to the originator of the demand, relevance notwithstanding, unless a denial of access is indicated by some other prudential or policy consideration.

The record you have demanded, to the extent that it exists, would be maintained in this agency's system of records known as "Alien File/Central Index System (A-file/CIS – Justice/INS 001A)." See 72 Fed. Reg. 1755 (Tuesday January 16, 2007). This system of records is protected from indiscriminate disclosures pursuant to the Privacy Act of 1974, as amended, 5 USC § 552a.[1] The Privacy Act strictly prohibits the disclosure of information assigned to this system of records to any person, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be, for example, required under the Freedom of Information Act (FOIA), 5 USC § 552, as amended; for a "routine use" as defined and described by the Privacy Act under subsections 552a(a)(7) and -(e)(4)(D), respectively; or pursuant to the order of a court of competent jurisdiction, 5 USC § 552a(b)(11). The release of the information you have requested is neither required by the FOIA, authorized by the system of records' published routine uses, nor ordered by a court of competent jurisdiction.

Under the FOIA, the subject record would be entitled to the protection of subsection (b)(6) of that Act which exempts from disclosure agency records the release of which would constitute a clearly unwarranted invasion of personal privacy, and its release would not contribute to the public's understanding of how this agency performs its statutory duties. See 5 USC § 552(b)(6). Accordingly, if requested by an unrelated third party under the FOIA, the subject record, if extant, would be withheld from disclosure by this agency pursuant to FOIA exemption (b)(6).

The disclosure you seek is not authorized under any provision of the Privacy Act. As an unrelated third party, you are not entitled to access the demanded record in your own right, and the USCIS has not been presented with a valid written consent to such a disclosure signed by the individual to whom the requested record pertains. See 5 USC § 552a(b). Moreover, the disclosure you seek is not authorized by the USCIS's published "routine uses" covering Alien Files. See 72 Fed. Reg. at 1757.

While subsection (b)(11) of the Privacy Act sanctions agency disclosures made "pursuant to the order of a court of competent jurisdiction," 5 USC § 552a(b)(11), judicial circuits are split as to whether such a subpoena constitutes the compulsory legal process addressed at subsection (b)(11) of the Act. The U.S. Court of Appeals for the District of Columbia, which has had occasion to analyze this provision, has taken the position that this provision must be interpreted literally, not liberally. That is, to be an "order of a court" recognized under subsection (b)(11), the order directing disclosure must specifically have been issued by a court. See John Doe v. Joseph DiGenova et al., 250 U.S. App. D.C. 274, 779 F.2d 74 (D.C. Cir. 1985); see also Stiles v. Atlanta Gas Light Company, 453 F. Supp 798 (N.D. Ga. 1978); U.S. v. Brown, 562 F.2d 1144 (9th Cir. 1978). Consequently, it could be cogently argued that the subject subpoena duces tecum is not an "order of a court" within the meaning of subsection (b)(11). Under such circumstances, the USCIS would be prohibited, pursuant to the Privacy Act, from granting the requested disclosure. Even if it were decided otherwise, then the issue would merely have been brought full circle inasmuch as discoverability, once again, would be governed by the relevance standard of Fed. R. Civ. P. 26(b)(1). Our position on relevance is fully set forth above.

---

[1] While it is a well established principle that, in the face of a subpoena, the Privacy Act does not create a qualified privilege, as that concept is generally understood, the protections afforded by that Act are relevant to determining the appropriate scope and manner of discovery. See e.g. Laxalt, 809 F.2d at 889; U.S. v. Lake County Board of Commissioners, 2006 U.S. Dist. LEXIS 47306 (N.D. Ind., June 7, 2006); Marozsan v. Veterans Administration, 1991 U.S. Dist. LEXIS 20884, No. S84-500, 1991 WL 441905, at *2-3 (N.D. Ind., June 24, 1991).

09/04/2007 11 26 FAX  312 372 9818        JOHNSON & BELL LTD                    ☒017/038

Howard Foster, Esq.
Page 4

As a result of the forgoing, the USCIS must respectfully decline to comply with the subject subpoena in the absence of a specific order of a court of competent jurisdiction directing the requested disclosure.

Sincerely,

Peter D. Gregory
Chief
Commercial and Administrative Law Division

www.uscis.gov



*Office of the Chief Counsel*

U.S. Department of Homeland Security
20 Massachusetts Avenue N.W., Room 4210
Washington, DC 20529

**U.S. Citizenship and Immigration Services**

November 9, 2007

Howard Foster, Esquire
Johnson & Bell
Attorneys-at-Law
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603-5404

Re: *Trollinger, et al. v. Tyson Foods, Inc., et al.,*
    Case Nos. 4:02-cv-23 (E.D. Tenn.)/1:07-mc-341 (D.D.C.)

Dear Mr. Foster:

I have been asked to respond to your letter of September 24, 2007, addressed to the Office of General Counsel, U.S. Department of Homeland Security (DHS), forwarding a subpoena commanding the production of documents from DHS files pertaining to Lorena Hart, also known by other aliases, and sixty-seven (67) other current or former employees at Tyson Foods, Inc.

As we have discussed previously in connection with this case, the DHS has adopted *Touhy* regulations that set forth the procedures to be followed with respect to the service of, and responses to, subpoenas for official information, records, or action directed at the DHS or its constituent units. *See United States Ex Rel. Touhy v. Ragen, Warden, et al.*, 340 US 462 (1951); 6 CFR Subpart C. Section 5.48 of the regulations outlines factors that a DHS component must consider in determining whether to comply with a demand or request for agency records and information. *See* 6 CFR 5.48. Among any other pertinent considerations, the regulations direct Department officials and attorneys to consider whether compliance is appropriate under the applicable rules of discovery or the applicable rules of procedure governing the case or matter in which the demand arose. *See* 6 CFR 5.48(a)(1).

To announce your demand for access to DHS records, you elected to issue a subpoena *duces tecum* under the auspices of the U.S. District Court for the District of Columbia. Your demand, therefore, is governed by Rule 26(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 26(b). Under Rule 26(b)(1), parties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information need not be admissible at trial, if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

The test of discoverability is the relevance standard of Rule 26(b)(1). *See e.g. Paul Laxalt v. C.K. McClatchy, et al.*, 258 U.S. App. D.C. 44; 809 F.2d 885 (D.C. Cir. 1987); *Forrest v. U.S.*, No. 95-3889, 1996 U.S. Dist. LEXIS 4589, at *4 (E.D. Pa., Apr. 11, 1996). If official information is sought



GOVERNMENT EXHIBIT 2

Page 2 – Mr. Howard Foster re *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23

by request or demand, a DHS regulation requires the party seeking such release to set forth, with as much specificity as possible, the nature and relevance of the official information sought in the context of the cause of action from which the demand arose. *See* 6 CFR 5.45(a). The purpose for this regulatory requirement is to obtain, for the administrative record, sufficient information to arrive at a tenable determination regarding relevance as contemplated by Rule 26(b)(1).

In compliance with subsection 5.45(a) of the regulations, the subject subpoena was accompanied by a letter "included to give [the DHS Office of General Counsel] some background information to the enclosed subpoena in order to help ... understand the nature of this case and to identify the relevant documents requested." *See* September 24, 2007, cover letter, 1st paragraph, 1st sentence. The action which gave rise to the instant demand is described in that letter as a "class action ... brought by legally employed employees of Tyson Foods, Inc., against Tyson and its senior executives for depressing their wages by employing large numbers of illegal immigrants." Passages aimed specifically at establishing the relevance of the demanded information, in pertinent part, state:

> Class Counsel contends [the 67 individuals named in Exhibit A of the subpoena] were all employed by using fraudulent and/or stolen immigration documents. Class Counsel has investigated the circumstances surrounding how these individuals claimed they are legally authorized to work and now need the opportunity to determine whether: 1) there is government documentation to support these individuals' claims; and 2) whether these individuals are who they claim to be (*i.e.*, they are not using stolen identification). Plaintiffs have no other method for resolving these two issues other than through this subpoena. These records are essential for the Class to prove its case.

> Ms. Hart formerly worked for Tyson Foods as a liaison to a number of local and national Hispanic Rights Groups, which we allege have formed a RICO enterprise with Tyson Foods in order to hire illegal aliens. She claims to be a legal permanent resident, though the facts surrounding her claim appear to be suspect. Therefore, if Hart is, or was ever, in the U.S. illegally, this would be very relevant for her motive in being a key figure in the alleged Tyson-Hispanic Group Enterprise. It would also be relevant in demonstrating Tyson's purpose in creating Hart's full-time liaison position with these groups. *For these reasons, her immigration status is relevant to our case* as we move forward and investigate her relationship with a number of these Hispanic Rights Groups. (Emphasis added.)

The relevance of the requested information pertaining to the 67 individuals named in Exhibit A of the subject subpoena is readily apparent and, at a minimum, appears reasonably calculated to lead to the discovery of admissible evidence as contemplated by Fed. R. Civ P. 26(b)(1). Notwithstanding, the Privacy Act of 1974, 5 USC 552a, as amended, remains an obstacle to the unfettered disclosure of this information, to the extent that it exists, as discussed more fully, *infra*.

Based upon information provided in the above-quoted cover letter regarding Ana Hart, and without more, it has been determined that there is no nexus or rational relationship between the subject of your demand, i.e., the immigration status of a corporate liaison, and the theory, as we understand it, underlying the cause of action fashioned as *Trollinger v. Tyson*, i.e., Tyson Foods has formed a RICO enterprise with local and national Hispanic Rights Groups in order to hire illegal aliens. If our understanding of your theory is correct, Tyson Foods could have formed a RICO enterprise with local and national Hispanic Rights Groups *regardless* of Lorena Hart's immigration status. Stated

Page 3 – Mr. Howard Foster re *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23

another way, how would it affect civil RICO litigation if it were conclusively shown that Ms. Hart is a legal permanent resident? Would Tyson Foods be more or less likely to be found as engaging in a RICO enterprise based upon Ms. Hart's immigration status? It would appear that no matter how the questions are cast or phrased, the immigration status of a lone corporate employee, Ms. Hart, without more, would be wholly irrelevant to establishing the existence of an ongoing RICO enterprise engaged in by Tyson Foods, *inter alia*.

In reaching this determination, the relevancy of the demanded information was liberally construed in keeping with the proposition that relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, discovery has ultimate and necessary boundaries. *See e.g. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed.2d 253 (1978). Agencies are admonished that the relevancy requirement "should not be misapplied so as to allow fishing expeditions in discovery." *Zenith Electronics Corporation v. Exzec, Inc.*, 1998 U.S. Dist. LEXIS 215, No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998). In assessing relevance, we confined ourselves to interpreting and analyzing only that information with which we were provided, and were unable to discern the relevance of Ms. Hart's immigration status to the underlying litigation or how disclosing that status could lead to the discovery of admissible evidence. Accordingly, the DHS/USCIS will not release this information under the terms of the subject subpoena *duces tecum*.

DHS regulations also require Department officials and attorneys to consider whether compliance with such a demand for access is appropriate under the relevant substantive law concerning privilege or the disclosure of official information. 6 CFR 5.48(a)(2). Obviously, if the information demanded is not subject to any privilege or statutory prohibitions against disclosure, and is the type readily available to any member of the general public, then there would be no basis for denying access to the originator of the demand, relevance notwithstanding, unless a denial of access is indicated by some other compelling prudential or policy consideration.

All of the records you have demanded, to the extent that they exist, would be maintained in this agency's system of records known as "Alien File/Central Index System (A-file/CIS – DHS/CIS 001)." *See* 72 Fed. Reg. 1755 (Tuesday January 16, 2007). This system of records is protected from indiscriminate disclosures pursuant to the Privacy Act of 1974, 5 USC 552a. [1] The Privacy Act strictly prohibits the disclosure of information assigned to this system of records to any person, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be, for example, required under the Freedom of Information Act (FOIA), 5 USC 552, as amended; for a "routine use" as defined and described by the Privacy Act under subsections 552a(a)(7) and -(e)(4)(D), respectively; or pursuant to the order of a court of competent jurisdiction, 5 USC 552a(b)(11). The release of the information you have requested is neither required by the FOIA, authorized by the system of records' published routine uses, nor ordered by a court of competent jurisdiction.

---

[1] While it is a well established principle that, in the face of a subpoena, the Privacy Act does not create a qualified privilege, as that concept is generally understood, the protections afforded by that Act are relevant to determining the appropriate scope and manner of discovery. *See e.g. Laxalt*, 809 F.2d at 889; *U.S. v. Lake County Board of Commissioners*, 2006 U.S. Dist. LEXIS 42306 (N.D. Ind., June 7, 2006); *Marozsan v. Veterans Administration*, 1991 U.S. Dist. LEXIS 20884, No. S84-500, 1991 WL 441905, at *2-3 (N.D. Ind., June 24, 1991).

Page 4 – Mr. Howard Foster re *Trollinger v. Tyson Foods, Inc.*, 4:02-cv-23

Under the FOIA, the subject records would be entitled to the protection of subsection (b)(6) of that Act which exempts from disclosure agency records the release of which would constitute a clearly unwarranted invasion of personal privacy, and their release would not contribute to the public's understanding of how this agency performs its statutory duties.. *See* 5 USC 552(b)(6). Accordingly, if requested by an unrelated third party under the FOIA, the subject records, if extant, would be withheld from disclosure by this agency pursuant to FOIA exemption (b)(6).

The disclosure you seek is not authorized under any provision of the Privacy Act. As an unrelated third party, you are not entitled to access the demanded record in your own right, and the USCIS has not been presented with a valid written consent to such disclosure signed by the individuals to whom the requested records pertain. *See* 5 USC 552a(b). Moreover, the disclosure you seek is not authorized by the USCIS's published "routine uses" covering Alien Files/Central Index System. *See* 72 Fed. Reg. at 1757.

While subsection (b)(11) of the Privacy Act sanctions agency disclosures made "pursuant to the order of a court of competent jurisdiction," 5 USC 552a(b)(11), judicial circuits are split as to whether such a subpoena constitutes the compulsory legal process addressed at subsection (b)(11) of the Act. The U.S. Court of Appeals for the District of Columbia, which has had occasion to analyze this provision, has taken the position that this provision must be interpreted literally, not liberally. That is, to be an "order of a court" recognized under subsection (b)(11), the order directing disclosure must specifically have been issued by a court, *i.e.*, signed by or at the direction of a Federal District Court judge. *See John Doe v. Joseph DiGenova et al.*, 250 U.S. App. D.C. 274, 779 F.2d 74 (D.C. Cir. 1985); *see also Stiles v. Atlanta Gas Light Company*, 453 F. Supp 798 (N.D. Ga. 1978); *U.S. v. Brown*, 562 F.2d 1144 (9th Cir. 1978). Consequently, it could be cogently argued that the subject subpoena *duces tecum* is not an "order of a court" within the meaning of subsection (b)(11). Under such circumstances, the USCIS would be prohibited, pursuant to the Privacy Act, from granting the requested disclosure. Even if it were decided otherwise, then the issue would merely have been brought full circle inasmuch as discoverability, once again, would be governed by the relevance standard of Fed. R. Civ. P. 26(b)(1). Our position on relevance is fully set forth above.

As a result of the forgoing, the USCIS must respectfully decline to comply with the subject subpoena in the absence of an order of a court of competent jurisdiction specifically directing the requested disclosure.

Sincerely,

Peter D. Gregory
Chief
Commercial and Administrative Law Division